Smith, Respondent, vs. Illinois Central Railroad Company, Appellant.

*December 9, 1915—January 11, 1916.*

*Railroads: Highway crossing: Insufficiency: Injury to driver of vehicle: Contributory negligence: Questions for jury.*

1. A highway east of and parallel with a railroad crossed the track diagonally to the southwest at an angle of about twenty-three degrees. On each side of each rail was a plank to raise the road to the level of the rail, and the space between the inner planks was filled with cinders. Plaintiff with a companion was driving southward in a light automobile. They testified that at this crossing their car was driven in the traveled track, but that the left front wheel struck the inner side of the west rail, which deflected the car along the railroad track to the south, and that plaintiff having lost control of the car it ran into a ditch and she was injured. The evidence as to the condition of the plank inside of the west rail was conflicting, but that for plaintiff was to the effect that the south end of that plank was worn and splintered and that the traveled track of the highway extended beyond and to the south of it. *Held*, that the jury were warranted in finding that the crossing was unsafe and insufficient.

2. In view of the acute angle at which the highway crossed the track, and the defect being one which might be overlooked or its dangerous character not appreciated by a person exercising ordinary care, and there being evidence that although plaintiff was familiar with the crossing she had theretofore always crossed in the other direction, and that a strong south wind was raising a dust which made it difficult to see the ground at that point, a finding that plaintiff was not guilty of contributory negligence was also warranted.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

Action to recover damages for personal injury. On June 27, 1914, plaintiff sustained an injury while driving her Ford automobile across the intersection of the *Illinois Central Railroad* tracks and a public highway in the town of Fitchburg. The railroad runs nearly north and south and

the highway for some distance is parallel to it on the east side; it then crosses the railroad diagonally at an angle of about twenty-three degrees and parallels it on the west side. There is a slight up grade in the highway to make the crossing. On both sides of each rail there was a plank to raise the road to the level of the rail. The space between the planks was filled with cinders. Plaintiff claims that the traveled track extended some six or eight inches beyond or south of the end of the plank just east of the west rail; and that the end of the plank was rotten, worn, and splintered in such a manner that it tapered almost to a point. She testified that she approached the crossing at a speed of not to exceed ten miles per hour, and that as she came to the grade she slightly increased her speed, but not to over twelve miles per hour. She claims she followed the main traveled track and that the right front wheel of her car crossed both rails, but the left front wheel struck the west rail at or just beyond the end of the splintered plank, and instead of going over was deflected by the rail and turned the car to the south. She lost control of her car and it ran for about thirty feet to the south along the railroad with the right wheels on the west side of the west rail and the left wheels between the rails. It then turned to the left, ran off the railroad track and into a ditch, causing injuries to plaintiff.

The jury found (1) that the crossing was unsafe and insufficient for public travel; (2) that such unsafe condition had existed long enough to give notice thereof to defendant in time to repair it before the injury to plaintiff occurred; (3) that the unsafe and insufficient condition of the crossing was the proximate cause of plaintiff's injury; (4) that plaintiff had no knowledge of the unsafe condition of the crossing before she was hurt; (5) that she was free from contributory negligence; and (6) that she sustained damages in the sum of $3,500. Judgment for plaintiff was entered upon the verdict and the defendant appealed.

For the appellant there was a brief by *Jones & Schubring,* and oral argument by *E. J. B. Schubring.*

For the respondent there was a brief by *Hill & Spohn,* and oral argument by *Carl N. Hill.*

VINJE, J.    The acuteness of the angle, about twenty-three degrees, at which the highway crossed the railroad is an important factor in the consideration of the questions presented by the appeal, as it bears upon the sufficiency of the crossing, the reasonableness of plaintiff's claim as to how the injury occurred, and the question of contributory negligence.    As to the former it is claimed that since the planks were thirty-two feet in length and the traveled track was not to exceed ten feet in width, there must have been a considerable length of plank at each end extending beyond the traveled track, or if the plank was defective at one end there was ample space to cross nearer the other end.    If a plank is laid across a traveled track ten feet wide at an angle of twenty-three degrees, it will take nearly twenty-six feet to extend across it. Assuming the traveled track to be exactly in the center, the thirty-two foot plank would at each end extend three feet beyond it.    But owing to the acute angle, only a relatively slight variation in the direction of the traveled track would throw it beyond the ends of the planks.    Defendant also argues that it is highly improbable that plaintiff's car was deflected by the rail as she claims.    This would be so if the crossing were at right angles or nearly so, as most crossings are.    But she was attempting to cross at an angle of twenty-three degrees.    A rail only four or five inches high might well deflect a light Ford machine going at the slow speed of only about twelve miles per hour under such conditions. The right front wheel had crossed the west rail and was presumably on relatively smooth ground.    The left front wheel struck the rail when approaching it at an angle of twenty-three degrees, and, the speed being slow and the car light,

the momentum was not enough to carry the wheel over the rail. On the contrary the rail deflected the car to the left and it ran down the track as plaintiff claims. Unfortunately she then lost control of it. Otherwise she might have escaped without injury. We therefore conclude there is nothing inherently improbable in plaintiff's claim as to how the accident happened. Defendant's theory that she drove the car entirely across both rails and in making the turn to the left to follow the highway she turned so far as to recross the track, is plausible enough also. It might have happened that way. But plaintiff and the woman who was with her say it did not and the jury evidently believed them. Since the physical facts sustain rather than contradict them we cannot say the jury was not warranted in finding that the accident occurred as plaintiff claims it did.

As to the sufficiency of the crossing, a number of apparently credible witnesses testified that the plank just east of the west rail was sound, nearly level with the rail, and extended beyond the edge of the traveled track. On the other hand at least four witnesses testified to the contrary. Mr. Reynolds, an electrician and nephew of plaintiff, who together with Dr. Ganser, in answer to a phone message from her, came to the place of the accident in a short time after it occurred and took her and Mrs. Reynolds, the plaintiff's companion at the time she was hurt, home, and who examined the crossing carefully, said the south end of the plank was badly worn, split, and slivered, and that the traveled track extended from six to eight inches south of it. Dr. Ganser, who examined the crossing at the same time that Mr. Reynolds did, testified:

"The south end of the plank . . . was worn to a wedge both on the flat surface and also on the width of it; in fact the corner was worn off. I should say that two or three inches or more of the corner was completely worn off, and the rest of it was very thin and came to a point like a sliver. It appeared as though a part of the plank had already been

Smith v. Illinois Central R. Co. 162 Wis. 120.

worn away; and it was splintered and seemed to have been partly filled with dust, and the end of the plank showed that it had been worn off. The traveled portion of the road extended considerably beyond the end of the plank, so that the south end of this plank terminated in the traveled track, while the track extended beyond the end of the plank for a distance of a foot or better."

Mrs. Reynolds testified:

"I was with *Mrs. Smith* from the time she started on this trip until I went into the ditch, and we were not exceeding eight miles an hour at the time she came to the crossing in question. The speed was increased a little as we came to the crossing on account of taking that grade. As we came to the crossing I was looking both ways for the train and listening and we were following the road straight ahead of me. We were driving right in the road as we came up on to the crossing and I am sure of that. It was right in the road as we were crossing the crossing that all at once we hit something hard, and the next thing I knew I was rigid and we were in a bank down in a hole. The auto turned very suddenly to the left. We bounded and I was rigid with fright until we landed in the ditch, and all I can remember is closing my eyes and waiting for the crash."

Plaintiff testified:

"Before I left that day I made an observation of the track and road there. I walked up there with Dr. and Mr. Reynolds and I saw that I was in the beaten track. While I made this observation I could see my left front wheel track in the dust and where it struck the rail.

"*Q.* Did you make any observation of the plank that was on the north side of the south rail? *A.* Yes, sir.

"*Q.* That's the plank on the inner side of the rail that you struck? *A.* Yes, sir.

"*Q.* Just tell the jury what you observed. *A.* I seen a very worn out rotted plank, with a big bolt sticking up through it, and it was too short to reach the middle of the track.

"When I speak of the traveled track I am referring to the entire track where the wheels run on the left side of the road. The left wheels on the vehicles that passed there traveled

over a space of two and one-half to three feet. I was right in the traveled track when I struck the rail. The left end of the plank, that is on the north side of the south rail, was about six to eight inches, I believe; from the outer edge of the traveled wheel track, and the condition of it was slivered and broken and sort of rotten where the wheels had struck it and slipped off and wore it down to a point. The rail on the roadbed which I struck had no filling at all beyond the end of the plank, as the filling was in the middle of the roadbed."

Mr. Penfield, a farmer living about a mile from the crossing and apparently a disinterested witness, who had driven over it about once a week and had made an examination of it shortly after hearing of the accident, thus describes the condition and location of the plank:

"The south end of the plank appeared worn off and split where the travel had worn it down, and where the wheels would strike it it was cracked and splintered up. This condition was caused from traffic, dragging, and the wheels also caused it to wear off. It was worn off at the end of the plank, tapered down, and this condition existed about two and one-half feet from the end of the plank, where it tapered off. The south end of the plank terminated six or eight inches inside of the travel where the wheel would strike in relation to this left traveled wheel-track."

It thus appears that there was a sharp conflict in the testimony as to the sufficiency of the crossing. The jury resolved such conflict in favor of the plaintiff and the trial court refused to disturb the conclusion they reached. There being nothing inherently incredible or impossible in the testimony supporting the judgment in this respect, the finding of the jury and the action of the trial court thereon are conclusive upon the parties.

Plaintiff was a married woman fifty-nine years old and had acted as substitute rural mail carrier for from fourteen to sixteen years prior to her injury and was accustomed to drive horses and her Ford automobile. She had substituted on seven different rural routes and was quite familiar with the crossing in question, though she had invariably up to the

day of the injury driven north over it instead of south.    De-
fendant urges that in view of plaintiff's familiarity with the-
crossing, the ease with which the alleged defect could be ob-
served by one driving a car on approaching the track, and the-
ample room on the west to cross safely, she should be held
guilty of contributory negligence as a matter of law.    Plaint-
iff claims that on the day in question there was quite a strong
south wind blowing which would raise the dust in the road
and make it difficult to see the ground ahead of the car; and
that it was particularly so just at the crossing owing to the-
dust from fine cinders that had been placed over and beyond.
it on both sides.    Be this as it may, we think the defect it--
self was one that a person exercising ordinary care might
overlook, or if seen he might not at once appreciate the dan-
gerous character thereof.    With a crossing at right angles-
or nearly so, the condition of the plank might not even con-
stitute a defect.    But in a crossing at an acute angle of'
twenty-three degrees, any material depression next to the-
rail would become quite a serious defect because of the dif-
ficulty of getting the wheel over the rail.    Any one who has-
driven a vehicle nearly parallel to a street-car track, even.
where the rails project but an inch or two, and attempted to-
cross will appreciate the trouble caused by a slight depression.
next to the rail.    The wheel of the vehicle drops into it and.
the rail tends to deflect the wheel and make it parallel the-
track.    In view of all the conditions existing at the crossing
as shown by plaintiff's evidence it cannot be said that the-
jury had no basis upon which to predicate absence of contrib--
utory negligence.

A number of alleged errors in the exclusion of evidence,
instructions given, refusal to instruct, remarks of plaintiff's-
counsel to jury, and excessive damages have been carefully
considered.    None of them justify a reversal or modification,
of the judgment and none appear of sufficient importance to-
require treatment.

*By the Court.*—Judgment affirmed.